United States District Court
Middle District of Florida
Jacksonville Division

**KIMBERLY BARDEN,**

 *Plaintiff,*

v.                 **NO. 3:20-cv-866-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

# Order

 Kimberly Barden brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Acting Commissioner of Social Security denying her applications for child's insurance benefits and supplemental security income. Doc. 1. Under review is a decision by an Administrative Law Judge (ALJ) signed on August 12, 2019. Tr. 18–36.

 Barden argues the ALJ erred in assessing opinions about her mental impairments by two nurse practitioners. Doc. 20. The Acting Commissioner contends there is no error. Doc. 21. The procedural history, administrative record, and law are summarized in the briefs, Docs. 20, 21, and not fully repeated here.

 A court's review of a decision by the Acting Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Acting Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"For claims filed ... before March 27, 2017, the rules in [20 C.F.R. §§ 404.1527 and 416.927] apply. For claims filed on or after March 27, 2017, the rules in [§§ 404.1520c and 416.920(c)] apply." 20 C.F.R. §§ 404.1527, 416.927. Because Barden filed her claims before March 27, 2017, *see* Tr. 232, 240, the rules in §§ 404.1527 and 416.927 apply.

The Social Security Administration (SSA) evaluates every medical opinion it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). A "medical opinion" is a statement from an "acceptable medical source" that reflects judgment about the nature and severity of a claimant's impairment. *Id.* §§ 404.1527(a)(2), 416.927(a)(2). An "acceptable medical source" is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech-language pathologist. *Id.* §§ 404.1513(a), 416.913(a). An opinion on an issue that is dispositive of a case—such as whether a claimant meets the severity of any impairment in the regulatory listings, *id.* Part 404, Subpart P, Appendix 1—is not a medical opinion because it is an opinion on an issue reserved to the Commissioner. *Id.* §§ 404.1527(d)(2), 416.927(d)(2). The SSA

2

"will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* §§ 404.1527(d)(3), 416.927(d)(3). An ALJ must state with particularity the weight given to each medical opinion and the reasons for the weight. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320–21 (11th Cir. 2021).

To determine the severity of an impairment and how it affects a claimant's ability to work, the SSA may use evidence from sources that are not acceptable medical sources, such as nurse practitioners. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). "Since there is a requirement to consider all relevant evidence … the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources[.]'" Social Security Ruling (SSR) 06-03p, 2006 WL 2263437 (Aug. 9, 2006). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

Here, the ALJ found Barden has severe impairments of mixed receptive-expressive language disorder, phonological disorder, borderline intellectual functioning, dysthymic disorder, obsessive-compulsive disorder, and social anxiety disorder. Tr. 21. He found Barden has no impairment or combination of impairments that meets or medically equals the severity of any impairment in the listings. Tr. 21. He found Barden has the residual functional capacity (RFC) to perform medium work with additional physical limitations and the following mental limitations:

> The claimant could perform simple, rote and repetitive tasks in a well-structured work environment, where job duties remain relatively fixed from one day to the next. The claimant's ability to interact with others is limited to occasional or less. The claimant should not have a job that requires she meet a strict production requirement goal or quota, such as assembly work or pay-by-the-piece type work. The claimant would work better with things as opposed to other people.

Tr. 24.

Barden argues the ALJ erred in assessing the opinions of Angela White, ARNP, Ph.D., and Lindsay McKim, ARNP, Ph.D. Doc. 20.

White and McKim each completed a form in which they opined on Barden's ability to perform certain work-related tasks. Tr. 602–03 (White); Tr. 688–89 (McKim). They checked boxes indicating Barden is markedly and severely limited in several tasks involving "understanding and memory," "concentration and persistence," "social interaction," and "adaption." Tr. 602–03, 688–89 (capitalization and emphasis omitted). "Markedly limited" is defined as: "Unable to perform th[e] task satisfactorily for 15-25% of the time during an 8 hour work day." Tr. 602, 688. "Severely limited" is defined as: "Unable to perform th[e] task satisfactorily over 26% of the time during an 8 hour work day." Tr. 602, 688.

White and McKim each also completed another form in which they opined Barden meets the requirements of certain listings. Tr. 608-19 (White); Tr. 671–84 (McKim). White opined Barden has marked limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 618. McKim opined Barden has extreme limitations in interacting with others and adapting or managing oneself and marked

4

limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. Tr. 683.

The ALJ gave little weight to White's opinions, explaining they are unsupported by the evidence "[f]or the same reasons discussed regarding" the opinions of the state agency consultants, Heather Bradley, Ph.D., and Sally Rowley, Psy.D., and because Barden "exhibited the ability to adjust" (e.g., she had a driver's license, used Uber, and indicated her current work schedule varied). Tr. 32. The ALJ also observed that "the opinion as to whether the claimant meets a Listing is an issue reserved to the Commissioner and therefore cannot be given special significance[.]" Tr. 32.

Addressing Bradley's and Rowley's opinions, the ALJ gave great weight to their overall opinion that Barden can "meet the mental demands of a simple vocation on a sustained basis." Tr. 28; *see* Tr. 96, 98, 110, 112 (Bradley); Tr. 128, 143 (Rowley). The ALJ explained the RFC accounts for Barden's shyness, self-consciousness about her speech, and social anxiety by limiting her to only occasional interaction with others. Tr. 28. The ALJ explained that although Barden needs extra time to process information, needs help with organization, struggles more with complex questions and multi-step operations, and needs additional explanations when learning new tasks, she can listen to and follow instructions. Tr. 28–29. She can thus perform "simple, routine, repetitive tasks with few workplace changes." Tr. 29. The ALJ gave little weight to Bradley's and Rowley's opinions that Barden may need additional supervision. Tr. 29; *see* Tr. 95, 97, 109, 111 (Bradley); Tr. 127, 142 (Rowley). The ALJ found the opinions inconsistent with the record and provided examples: although Barden stated her mind wanders sometimes, she had intact attention and concentration; she was attentive and on-task during appointments; and she

5

put forth good effort on tasks. Tr. 29. For these reasons, the ALJ also found she can concentrate "for at least two-hour periods with regular breaks." Tr. 29.

Regarding McKim's opinions, the ALJ gave them little weight, explaining they are "more severe than the evidence supports for the same reasons discussed regarding" the opinion of Jessica Anderton, Psy.D. Tr. 33. He added, "The opinion as to whether the claimant meets a Listing is an issue reserved to the Commissioner and therefore cannot be given special significance[.]" Tr. 33.

The ALJ gave great weight to Anderton's opinion, explaining it is consistent with the record "for the same reasons discussed regarding" the opinion of Lauren Lucas, Ph.D. Tr. 31. The ALJ gave great weight to Lucas's opinions that Barden can "perform routine repetitive tasks" and "appreciate the need for appropriate relations among coworkers and supervisors." Tr. 30; *see* Tr. 547 (Lucas's opinions). The ALJ found the opinions consistent with the record and provided examples: Barden's general intellectual ability and IQ are in the low-average to borderline range; she struggles more with complex questions and multi-step operations; and although she is shy, she was "regularly cooperative and polite" at appointments. Tr. 30.

White's and McKim's opinions are afforded no deference because they are not opinions from an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (quoted). The ALJ had to consider them and generally explain the weight given to them or otherwise ensure that his discussion would allow Barden or a reviewer to follow his reasoning. *See* SSR 06-03p, 2006 WL 2263437. The ALJ did so.

6

Substantial evidence supports the ALJ's findings on White's and McKim's opinions. As summarized in the ALJ's detailed discussion of the evidence, *see* Tr. 25–34, the record is replete with notations inconsistent with the severe and marked limitations in White's and McKim's opinions and consistent with the limitations in the RFC. *See, e.g.*, Tr. 643, 647, 651, 653, 655 (medical records showing Barden's speech was normal in rate, rhythm, fluency, and prosody; her concentration and recall of recent events were "intact"; she was attentive; her thought process was linear, organized, and goal-oriented; and no loosening of associations, tangentiality, or circumstantiality was observed); Tr. 442, 496, 513, 546, 554–55, 569, 595, 598, 659, 657, 668 (medical and school records showing Barden was cooperative); Tr. 496, 546, 569 (medical records showing Barden was polite); Tr. 54, 598, 633, 643, 668 (Barden's testimony and medical records showing medication helped her anxiety and stress); Tr. 713, 714 (June 2019 consultative psychological evaluation report showing Barden denied having problems with memory and concentration; her memory for recent personal information was "intact"; her attention and concentration were "fair to good"; her thoughts were coherent and goal-oriented; she was "friendly and responsive"; she "attended well in conversation"; and, although her expressive and receptive language development was limited, it was "adequate for conversation"; and she reported she used to work full-time as a bagger at a grocery store but now works part-time [three to fifteen hours a week] because she moved and had transportation issues); Tr. 52 (Barden's testimony that she stopped speech therapy upon graduating from high school); Tr. 485, 488, 490, 493, 496, 504 (May 2019 vocational evaluation report showing Barden was "able to listen to instructions and follow directions" and was "attentive and stayed on task throughout the entirety of the evaluation," though "she needed more time to process complex

7

questions"); Tr. 597 (June 2017 mental status examination report showing Barden's thought process was coherent and goal-oriented and her concentration and memory appeared "grossly intact"); Tr. 377 (April 2017 function report completed by Barden answering "no" to the question, "Do you have any problems getting along with family, friends, neighbors, or others?"); Tr. 569, 570, 574 (October 2016 vocational evaluation report showing Barden's speech was "marked by slight difficulty"; she was "generally able to communicate proficiently"; she was "sufficiently able to remain alert and well[-]focused" during the evaluation; and she reported she "has been able to successfully work as a grocery bagger for the past two years with no significant difficulty in attendance, punctuality or social integration"); Tr. 546, 547 (January 2013 learning disabilities evaluation report showing Barden's articulation was "mildly impaired" and her pace was "generally adequate"); Tr. 314 (September 2012 individualized educational plan (IEP) showing Barden had "a very successful 10th grade year … academically," ending with a GPA of 3.2; she is a hard worker; she "is very motivated to succeed academically"; and she "wishes to succeed independently"); Tr. 276 (December 2009 IEP showing that although Barden had a low vocabulary and was quiet, she was a "good student"; was hardworking; was "very sweet"; and received one A, two Bs, and one C); Tr. 338 (February 2004 school records showing Barden received two Bs and two Cs and was "making adequate progress on her IEP goals"). In addition, the opinions that she meets certain listings are not medical opinions because they are on an issue reserved to the Acting Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The issue is not whether some evidence might support White's and McKim's opinions but whether substantial evidence supports the ALJ's finding that the opinions are inconsistent with the record. As explained, it does.

8

Barden briefly argues the ALJ erred because having a driver's license and using Uber does not show she can work on a sustained, full-time basis. *See* Doc. 20 at 21–22. This argument lacks merit. The issue is not whether having a driver's license and using Uber show she can work on a sustained, full-time basis, but whether having a driver's license and using Uber undermine White's opinions that she has marked or extreme limitations. And Barden's driver's license and ability to use Uber were only two of the many reasons the ALJ gave for giving little weight to White's opinions. *See* Tr. 32. As explained, the evidence on which the ALJ relied constitutes substantial evidence supporting his finding.

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Kimberly Barden and close the file.

**Ordered** in Jacksonville, Florida, on March 28, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*